**RICE LAKE CONTRACTING CORP. and City of Two Harbors, Respondents,**

v.

**RUST ENVIRONMENT AND INFRASTRUCTURE, INC., n/k/a Earth Tech Consulting, Inc., Appellant,**

**GME Consultants, Ltd., Defendant.**

**No. C5–00–130.**

Court of Appeals of Minnesota.

Aug. 22, 2000.

Review Denied Oct. 26, 2000.

---

Gregory T. Spalj, Tien T. Cai, Fabyanske, Westra & Hart, P.A., Minneapolis, for respondents Rice Lake Contracting and City of Two Harbors.

Larry M. Nord, Orman & Nord, Duluth, for respondent City of Two Harbors.

Robert J. Huber, Leonard, Street and Deinard, P.A., Minneapolis, for appellant.

Considered and decided by HALBROOKS, Presiding Judge, DAVIES, Judge, and PETERSON, Judge.

## OPINION

DAVIES, Judge.

Appellant challenges the trial court's legal conclusions regarding indemnity, differing site-conditions, and damages. We affirm as modified.

## FACTS

Respondent City of Two Harbors (Two Harbors) contracted with respondent Rice Lake Contracting Corp. (Rice Lake) to improve Two Harbors' sewage-treatment plant. Two Harbors had earlier hired appellant Rust Environment and Infrastructure, Inc. (Rust), and GME Consultants, Inc. (GME), as consulting engineers on the project. After completing the improve-

ment, Rice Lake sued Two Harbors for breach of contract, claiming that Two Harbors owed it an additional $2,166,750 for rock excavation. Two Harbors filed a third-party complaint against Rust and GME.

Rice Lake and Two Harbors then entered into a settlement agreement whereby Two Harbors paid Rice Lake $200,000 and executed a conditional promissory note to Rice Lake for $1,585,402. The note was payable only out of the proceeds, if any, from legal claims Two Harbors was to assert against Rust and GME. Rice Lake agreed to pay for pursuing Two Harbors' suit against Rust and GME and was granted full control over the case. The case has produced two previous appeals: *Rice Lake Contracting Corp. v. Rust Environment and Infrastructure, Inc.*, 549 N.W.2d 96 (Minn.App.1996), *review denied* (Minn. Aug. 20, 1996), and *Rice Lake Contracting Corp. v. Rust Environment and Infrastructure, Inc.*, 1998 WL 148082 (Minn. App.1998), *review denied* (Minn. May 28, 1998).

On this third appeal, the main issue is whether Two Harbors' indemnity claims are limited to the $200,000 that Two Harbors actually paid. Rust argues that a common-law indemnity rule allows recovery only of amounts that have actually been paid or for which the indemnitee is unconditionally liable.

At trial, the judge first determined that Rust's claim that the bedrock discovered at the site was a differing site-condition failed, as a matter of law. (This ruling is also at issue in this appeal.) A jury then found that Two Harbors incurred a $2,166,750 liability to Rice Lake under the construction contract that Rust prepared for Two Harbors. The jury also found that $1,994,378 of that amount should be paid by Rust because its negligence in preparing the contract and supervising performance caused the city to incur this much of its liability to Rice Lake. Notwithstanding the jury's verdict, the trial court entered judgment against appellant Rust for just $1,785,402 (plus prejudgment interest), ruling that the settlement agreement between Two Harbors and Rice Lake limited Rust's liability—and Rice Lake's recovery—to this amount (the conditional promissory note plus the $200,000 paid).

The trial court denied Rust's motion for a new trial or amended findings. This appeal followed.

## ISSUES

1. Did the conditional promissory note provide a basis for an indemnity claim?

2. Was the award of prejudgment interest proper?

3. Did the trial court err in rejecting the differing site-condition claim?

4. Was the jury damage award properly calculated?

## ANALYSIS

This case involves statutory and contract interpretation, which are questions of law subject to de novo review. *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992).

### I.

A right of indemnity arises when a party seeking indemnity has incurred liability due to a breach of a duty owed to it by the one sought to be charged, and such a duty may arise by reason of a contractual obligation. *Altermatt v. Arlan's Dep't Stores*, 284 Minn. 537, 538, 169 N.W.2d 231, 232 (1969). "Indemnity usually requires that one party reimburse another entirely for its liability." *Zontelli & Sons, Inc. v. City of Nashwauk*, 373 N.W.2d 744, 755 (Minn.1985).

Under Minn. R. Civ. P. 14.01, a joint tortfeasor need not wait until it has made the actual payment to bring an indemnity claim, but may institute a third-party action in conjunction with the original claim. *Grothe v. Shaffer*, 305 Minn. 17, 25, 232 N.W.2d 227, 232 (1975). When such a third-party action is brought, the

indemnity claim is contingent on the outcome of the original action. *Id.*, 232 N.W.2d at 233.

In this case, instead of pursuing the original action between them, Two Harbors and Rice Lake entered into a settlement agreement whereby Two Harbors paid Rice Lake $200,000 and executed a conditional promissory note. The settlement allowed Rice Lake to step into Two Harbors' place in pursuing an indemnity action against Rust. Success in that action was the condition on which the note became payable.

This procedure is different from the usual approach with an indemnity claim, but indemnity is "an equitable doctrine that does not lend itself to hard-and-fast rules, and its application depends upon the particular facts of each case." *Zontelli*, 373 N.W.2d at 755.

Rust argues that the settlement agreement limits Two Harbors' third-party indemnity claim against Rust to the $200,000 Two Harbors actually paid to Rice Lake because, for indemnity purposes, the conditional promissory note is not payment. Rust argues that common-law indemnity requires actual payment. In support of this proposition Rust references a Restatement of Restitution comment:

> [W]here the secondary obligor [here Two Harbors] gives a negotiable instrument as conditional payment he is not entitled to indemnity until the instrument has been paid or he has become unconditionally liable to a transferee of the instrument. * * * Before such time, the duty of the primary obligor [here Rust] has not been discharged and the benefit to him cannot be measured.

Restatement of Restitution § 76 cmt. c (1937).

Rust is correct that liability could not arise from Two Harbors' *conditional* payment to Rice Lake. But here, the payment ceased to be conditional once the jury determined, first, that Rice Lake was entitled to $2,166,750 under its contract with Two Harbors and, second, that Rust's negligence caused $1,994,378 of this obligation. Therefore, Two Harbors' claim against Rust is no longer limited to the $200,000 actually paid by Two Harbors to Rice Lake; the promissory note became unconditionally payable for indemnity purposes when Two Harbors' liability to Rice Lake and Rust's liability to Two Harbors was established.

Furthermore, during the time the note remained conditional, no procedural rule barred Rice Lake and Two Harbors from pursuing the indemnity claim. Were we to rule that such a bar existed, parties in the position of Rice Lake and Two Harbors would be precluded from settlements, like this one, that serve judicial efficiency by turning three-sided disputes into two-sided conflicts.

We note also that the issues Rust faced at trial after the Rice Lake–Two Harbors settlement were precisely those it confronted before the settlement. There was some realignment of the parties, but, at bottom, Two Harbors was simply put in the role of a neutral. In most cases, turning a party into a neutral will simplify the trial.

## II.

Rust also argues that prejudgment interest was improperly included in the judgment. The settlement agreement limited Rice Lake's recovery to the amount of the conditional promissory note for $1,585,402 plus the cash payment, without any reference to prejudgment interest. Neither Rice Lake nor Two Harbors can now claim prejudgment interest on the damages award when Two Harbors' conditional liability and therefore Rice Lake's recovery were capped by the promissory note. *See Summit Court, Inc. v. Northern States Power, Co.*, 354 N.W.2d 13, 15 (Minn.1984) (after party executes release and satisfaction of judgment, that party may not later claim prejudgment interest). The trial court improperly awarded pre-

judgment interest and the judgment is reduced by the amount of that interest award.

## III.

■■■■ Rust claims that it is entitled to a new trial on the issue of damages because the trial court erred in determining, as a matter of law, that it was not entitled to an adjustment based on a differing site-condition.

A differing site condition may generally be described as a subsurface or other unknown physical condition at the site which differs materially from that indicated in the contract or from that which is ordinarily encountered, which leads to a material change in the cost of construction.

*City of Morton v. Minnesota Pollution Control Agency,* 437 N.W.2d 741, 743 (Minn.App.1989).

■■■■ To prevail on its claim of a differing site-condition, Rust must prove cumulatively that

(i) the contract documents must have affirmatively indicated or represented the subsurface conditions which form the basis of the plaintiff's claim; (ii) the contractor must have acted as a reasonably prudent contractor in interpreting the contract documents; (iii) the contractor must have reasonably relied on the indications of subsurface conditions in the contract; (iv) the subsurface conditions actually encountered, within the contract site area, must have differed materially from the subsurface conditions indicated in the same contract area; (v) the actual subsurface conditions encountered must have been reasonably unforeseeable; *and* (vi) the contractor's claimed excess costs must be shown to be solely attributable to the materially different subsurface conditions within the contract site.

*Weeks Dredging & Contracting, Inc. v. United States,* 13 Cl.Ct. 193, 218 (Cl.Ct. 1987), *aff'd* 861 F.2d 728 (Fed.Cir. Sept.2, 1988) (emphasis added). The elements are cumulative, not in the alternative. *Id.*

Element (iv) in the above list of elements required to establish a differing site-condition is critical. It is that the subsurface conditions actually encountered differ materially from the subsurface conditions that had been indicated to exist in the contract area. There is here no genuine factual dispute on this issue because the uncontested evidence showed: (1) GME's soil report contained the result from a boring sample that indicated that one of the five soil exploration borings was unable to advance despite 50 blow weights; (2) a GME engineer stated that based on these reports he would expect bedrock at the site; (3) Rust defined "rock" for purposes of the project as a "blow count" in excess of 50 blow weights with no penetration; (4) bedrock was found in prior construction projects at the site; (5) Rust estimated that 800 cubic yards of rock excavation would be required for the project; and (6) the bid form solicited separate unit prices for rock excavation.

The trial court did not err in determining that there was no genuine issue of fact and, as a matter of law, Rust was not entitled to an adjustment based on a differing site-condition.

## IV.

■■■ Rust finally argues that damages were improperly calculated, claiming the amount of the judgment should be reduced by the actual cost of the rock excavation. The jury was instructed to deduct the cost of the rock excavation from the damage award and presumably did so. The trial court properly concluded that Rust is not entitled to have the cost of rock excavation subtracted from the settlement agreement. To do so would give Rust double credit.

## DECISION

The trial court did not err in ruling that the conditional promissory note became payable for indemnity purposes after a jury determined the secondary and

primary obligors' liability, or in finding that a differing site-condition was not present. The trial court erred in awarding prejudgment interest when the settlement agreement did not provide for payment of prejudgment interest. The principal judgment amount of $1,785,402 is otherwise proper.

**Affirmed as modified.**