United States Court of Appeals
For the Eighth Circuit
No. 19-3562

Dina Klein

*Plaintiff - Appellant*

v.

The Affiliated Group, Inc.; Credit Management

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: November 17, 2020
Filed: April 14, 2021

_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Dina Klein received debt collection letters from The Affiliated Group and Credit Management, LP after she was treated at North Memorial Health Care. She sued the debt collectors, alleging that they violated the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692 *et seq.* The district court[1] granted summary judgment to the debt collectors and Klein appeals. We affirm.

I.

Dina Klein owed money to North Memorial Health Care. She applied to North Memorial for financial assistance, but her application was denied. In November 2017, North Memorial hired The Affiliated Group (TAG) to collect the debt. TAG sent Klein a letter that month informing her that "the below listed account(s) has been turned over to us by our client, who has given you an opportunity to satisfy this obligation." Add. 2. TAG's letter did not mention anything about North Memorial's financial assistance policy.

When TAG sent its letter in November 2017, both TAG and Credit Management, LP (CMLP) were wholly-owned but separate subsidiaries of The CMI Group. The district court thought that TAG and CMLP "merged" on January 1, 2018, D. Ct. Dkt. 80 at 3, but Klein disputes this, saying that the "record evidence does not support a corporate merger between TAG and CMLP," Klein Br. 22 (emphasis omitted). The district court inferred that the entities merged because all of TAG's contracts, assets, employees, obligations, and rights were assigned or transferred to CMLP—including TAG's written agreement with North Memorial for debt collection services. After the two companies consolidated accounts under the CMLP label, CMLP restarted debt collection under its own name, and sent a substantially similar letter to Klein in March 2018.

At all relevant times, North Memorial had an agreement with the Minnesota Attorney General requiring North Memorial to enter into written contracts with any third-party debt collection agency. The agreement required North Memorial to include contract language which would oblige debt collectors to comply with federal

---

[1]The Honorable Donovan W. Frank, Senior United States District Judge for the District of Minnesota

law and would require North Memorial to confirm that the patient was given a reasonable opportunity to apply for charitable care or other need-based relief.

After receiving the CMLP letter, Klein sued TAG and CMLP, arguing that they violated the FDCPA by failing to have a written contract as required by North Memorial's agreement with the Minnesota Attorney General, making false statements in the March 2018 letter, and failing to include information about North Memorial's financial assistance policy in the November 2017 and March 2018 letters. The district court analyzed each of Klein's points, concluded that none of them carried the day, and entered summary judgment in favor of TAG and CMLP.

Klein appeals, making three arguments: (1) the district court erred by granting summary judgment while there was still a genuine dispute over material facts; (2) the district court improperly construed the law by finding the debt collection communication was not false; and (3) the district court improperly construed the law when it ruled that a debt collector can engage in an activity that North Memorial could not under the FDCPA and applicable regulations.

## II.

"We review the grant of summary judgment *de novo*, viewing the facts and drawing all inferences in the light most favorable to" the non-movant. *Thompson v. Kanabec Cnty.*, 958 F.3d 698, 705 (8th Cir. 2020). Summary judgment is proper if there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it is potentially outcome-determinative under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## A.

Klein first argues that the district court's ruling on summary judgment improperly relied on disputed facts, including the finding of a merger between TAG

and CMLP and the existence of a written contract between CMLP and North Memorial.

Klein says the merger was genuinely disputed because the record supplied evidence that CMLP and TAG did not merge—which she says means there was no contract between CMLP and North Memorial. Klein directs our attention to the district court's statement that the entities merged on January 1, 2018 and compares that with an admission by CMLP that TAG and CMLP were separate entities in 2019. Klein further argues that TAG and CMLP could not have merged because they did not follow state law governing mergers. Klein's final point is that TAG and CMLP did not tell North Memorial that they were merging, and that they instead said that TAG was going through a "name change." Klein Br. 34.

Klein also disputes the district court's finding that there was a written contract. She argues that there was only a written contract between North Memorial and TAG, so the agreement and amendment that the district court referenced as being between North Memorial and CMLP was actually between North Memorial and The CMI Group, CMLP's parent company. Plus, that agreement and amendment were entered into after CMLP sent its letter to Klein in March 2018. So, Klein says, it was disputed whether there was a written agreement between North Memorial and CMLP.

TAG and CMLP respond to Klein by saying that as of January 1, 2018, "TAG was integrated into CMLP" but was not formally merged. TAG/CMLP Br. 20. They clarify that "the corporate form of TAG and CMLP did not change," but "the assets, employees, and contracts of TAG were assigned and transferred to CMLP." *Id.* at 22. TAG and CMLP contend that this assignment of contract rights operated to satisfy the written contract requirement. In closing on this point, TAG and CMLP say that the assignment was permissible under Minnesota law and that North Memorial and CMLP continued to operate under the same agreement that governed TAG.

This issue hinges on whether the dispute between the parties is over a material fact. If the assignment from TAG to CMLP created a contract between CMLP and North Memorial as a matter of law, then it is not material whether there was a formal merger.

One of our cases about Minnesota contract law and assignment answers the question. In *Cascades Development of Minnesota, LLC v. National Specialty Insurance*, we cited to a Minnesota Supreme Court case for the proposition that an assignee of the rights of an original party to the contract "is in privity with the original parties." 675 F.3d 1095, 1100 (8th Cir. 2012) (citing *La Mourea v. Rhude*, 295 N.W. 304, 307 (Minn. 1940)). We also cited to a more recent Minnesota Supreme Court case to note that Minnesota law recognizes that an assignment "place[s] the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment." *Id.* at 1099 (quoting *Illinois Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 803 (Minn. 2004)) (emphasis omitted). We concluded in *Cascades* that an assignee was "a real party in interest" under Minnesota law. *Id.* at 1100.

In line with *Cascades*, we conclude that the assignment of a contract is enough to put the assignee into privity with an original party to that contract under Minnesota law. So, the record before the district court established that there was a written agreement between North Memorial and CMLP due to TAG's assignment. Despite the district court's use of the term "merger" to describe this state of affairs, there is no dispute over a material fact and summary judgment on this issue was proper.[2]

---

[2]Klein implies that because the North Memorial-TAG contract did not expressly provide for assignment, TAG was not allowed to assign the contract. Klein Br. 16. But Minnesota contract law generally permits assignment unless there is contractual language representing the intent of the parties to forbid it. *See* Minn. Stat. § 336.2-210; *see also Travertine Corp. v. Lexington-Silverwood, Ltd. P'ship*, 683 N.W.2d 267, 272 (Minn. 2004). In arguing this point, Klein mistakes what she calls a "factual determination that there was a written agreement" between North Memorial and CMLP for what was really the district court's legal determination that the contract had been assigned. *Compare* Klein Br. 26–27 *with* D. Ct. Dkt. 80 at 3.

*See Beckley v. St. Luke's Episcopal-Presbyterian Hosps.*, 923 F.3d 1157, 1160 (8th Cir. 2019) ("We may affirm on any basis supported by the record.").

B.

Klein next argues that the district court improperly construed the law about false debt collection communications and erred when it concluded that the CMLP letter did not include false statements.

15 U.S.C. § 1692e prohibits using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." That section also prohibits using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." § 1692e(10). We evaluate debt collection communications from the perspective of an unsophisticated consumer. *Duffy v. Landberg*, 215 F.3d 871, 873 (8th Cir. 2000).

Klein says CMLP violated the FDCPA by including false, deceptive, or misleading information when it sent the March 2018 letter. She argues that the communication was illegal because the letter said North Memorial "turned over" her account to CMLP when her account was either never turned over or at most assigned to CMLP by TAG. Klein Br. 38–43. In sum, Klein says "the district court improperly disregarded and ignored [a] genuine issue of material fact and made the factual determination that [her] account was turned over to CMLP by [North Memorial]." Klein Br. 38.

We have already decided that CMLP was the valid assignee of the contract between North Memorial and TAG. So CMLP could legally take action to collect that debt on behalf of North Memorial, and CMLP did not violate § 1692e by saying as much. Also, the body of CMLP's letter contained language identical to that in TAG's letter and did not do anything different from TAG's letter. In fact, both letters were signed by the same administrator, were labelled with the same physical addresses, listed the same contact telephone numbers, logged the same two charges

Klein owed to North Memorial, and clearly spelled out that North Memorial was the debt owner. *Compare* App. 94 *with* App. 107. Even viewing all of this from the perspective of the unsophisticated consumer, no reasonable jury would believe that any deception was caused by the phrase "the above-listed account[] has been turned over to us by our client," nor was that statement false in light of our earlier canvass of Minnesota contract law. App. 107. We conclude the district court did not err when it granted summary judgment on this issue.[3]

## C.

Klein finally argues that the district court's interpretation of § 1692e(5)[4] and § 1692f(1)[5] improperly allows a debt collector to engage in an activity that the debt owner may not. Klein says TAG and CMLP violated § 1692e(5) and § 1692f(1) by attempting to collect her debt without notifying her of North Memorial's financial assistance policy. Because Treasury Department regulations required North Memorial to include its financial assistance policy in its billing statements, Klein asserts that TAG and CMLP were required to include it in their collection letters, too.

The district court reasoned that because TAG and CMLP "are not hospital organizations" and "do not operate hospital facilities," the Treasury Department regulations governing North Memorial do not apply. D. Ct. Dkt. 80 at 11. That is correct. To be sure, North Memorial is a hospital organization and so is required by

---

[3]Klein's recitation of various pieces of deposition testimony to the effect that "North Memorial never turned anything over to CMLP" is immaterial because of TAG's assignment of the contract to CMLP. Klein Br. 28.

[4]Section 1692e(5) prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

[5]Section 1692f(1) outlaws "unfair or unconscionable means" of debt collection, including collecting "any amount" unless "such amount is expressly authorized by the agreement creating the debt or permitted by law."

federal regulation to have a written financial assistance policy and to widely publicize that policy in its billing statements.[6]  *See* 26 C.F.R. § 1.501(r)-4(b)(5)(i)(D)(2).  But debt collection letters sent by third party debt collectors are not billing statements issued by a "hospital organization"—the explicit subject of the relevant regulations.  26 C.F.R. § 1.501(r)-4(a).

Klein's invocation of *Heintz v. Jenkins* to support her argument is inapt.  That case dealt with the question of whether the FDCPA "appl[ies] to lawyers engaged in litigation" aimed at collecting debt on behalf of their clients.  *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).  The Supreme Court decided in *Heintz* that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity." *Id.* at 299.[7]  Here, by contrast, there is no dispute that the FDCPA governs TAG and CMLP; the sole question is whether they violated the law.

We conclude they did not.  TAG and CMLP are separate entities from North Memorial.  North Memorial assigned only its ability to collect debt to TAG and CMLP, not its medical billing function—and the record shows that Klein received a medical bill and attempted to avail herself of North Memorial's financial assistance policy without success before getting the debt collection letters.  The FDCPA mandates that TAG and CMLP comply with its terms in collecting debt, but that law does not impute North Memorial's responsibility to comply with Treasury Department medical billing regulations to debt collectors working on its behalf.  For

---

[6]Klein testified that she knew of and applied for North Memorial's financial assistance policy after getting her first billing statement from North Memorial—which was before TAG contacted her.  Klein also knew that she could not go back and reapply when she received the debt collection letters later on.  So, Klein had actual notice of North Memorial's financial assistance policy.

[7]The FDCPA was amended after the *Heintz* decision to provide an exception for "a formal pleading made in connection with a legal action."  15 U.S.C. § 1692e(11), *as amended by* Pub. L. 104-208, § 2305(a), 110 Stat. 3009, 3009-425 (1996).

that reason, we conclude that the letters TAG and CMLP sent are outside the Treasury Department regulations' scope.

Because CMLP and TAG did not violate the FDCPA, the district court committed no error and its grant of summary judgment was proper.

III.

The judgment of the district court is affirmed.

_____